**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | |
|---|---|
| ARDRIA CLARK, as next friend, and and on behalf, of MARIAN GREEN MARSHALL, and MARIAN GREEN MARSHALL,<br><br>              Plaintiffs,<br><br>      -against -<br><br>GARY, WILLIAMS, PARENTI, WATSON, GARY & GILLESPIE, P.L.L.C. d/b/a GARY, WILLIAMS, PARENTI, WATSON AND GARY, P.L.L.C., WILLIE E. GARY, KOBIE O. GARY, and MARCUS LETT,<br><br>              Defendants. | Civil Action File No. 7:23-CV-25<br><br><br>**COMPLAINT** |

COMES NOW Plaintiffs ARDRIA CLARK, as next friend, and on behalf, of her mother MARIAN GREEN MARSHALL, and MARIAN GREEN MARSHALL, who allege as follows for their complaint against Defendants GARY, WILLIAMS, PARENTI, WATSON, GARY & GILLESPIE, P.L.L.C. d/b/a GARY, WILLIAMS, PARENTI, WATSON & GARY (the "Gary Firm"), WILLIE E. GARY, KOBIE O. GARY, and MARCUS LETT:

**NATURE OF ACTION**

1.     This is a civil action for legal malpractice, fraud, and bad faith to recover compensatory and punitive damages arising from legal representation

provided by Defendants, the Gary Firm and Willie Gary (collectively, "Gary"), to Ms. Marshall in personal injury and product liability claims arising from an October 19, 2016 automobile accident in which Ms. Marshall sustained permanent life-altering injuries, including brain injuries and mental deficits.

2.    Gary's misconduct falls into four categories. First, he charged $600,000 as his fee on recovery of the $1.5 million policy limits tendered by insurers of the other vehicle involved in the crash, even though the insurers readily tendered their policy limits based on Ms. Marshall's serious injuries and the undisputed circumstances of the accident. Considering that Gary did not expend more than a few hours to obtain this insurance settlement, his $600,0000 fee is unreasonable, and Ms. Marshall is entitled to recover at least $550,000 of that fee under Georgia law.

3.    Second, Willie Gary's son, Defendant Kobie Gary, who worked as a paralegal at the Gary Firm, enticed one of Ms. Marshall's daughters, Tamesha Marshall-Pharr, into engaging in sexual acts with him and, upon information and belief, with his father, Willie Gary. Tamesha agreed to these sexual acts, upon information and belief, in return for Gary's agreement to divert Ms. Marshall's share of the insurance settlement to Tamesha. Rather than distribute Ms. Marshall's share of the insurance settlement directly to Ms. Marshall in one lump sum, Gary issued four checks for unequal amounts between January and September 2017. Willie Gary

2

and Kobie Gary delivered these checks to Tamesha, who cashed or otherwise used them with her mother's forged signature. After Tamesha's husband, Arthur Lee Pharr, learned of her extramarital affairs, he shot and killed Tamesha on July 3, 2018. He is now serving a 25-year prison term.

4.     Third, Gary commenced a product liability action in Florida state court against companies that he alleged manufactured Ms. Marshall's 2012 Nissan Sentra and the airbags with which the Sentra was equipped, *Marshall v. Takata Corporation, et al.*, 2019-011813-CA-01 (17th Judicial Cir. Miami-Dade Co., Fla.). Gary did not sue the car manufacturer, however, but instead sued Nissan's Japanese parent company, which did not manufacture the car. Nor did Gary properly serve any of the defendants. And because the accident took place in Georgia rather than in Florida, the Florida court lacked personal jurisdiction over the defendants, even had Gary sued the car manufacturer. In addition, because the Florida action was commenced more than two years after the accident, Ms. Marshall's product liability claims were barred under Georgia's applicable two-year statute of limitations. On July 15, 2021, Gary withdrew from the action without disclosing these acts of professional malpractice to Ms. Marshall or her family. Ms. Marshall retained new counsel, who was forced to settle the action for nuisance value due because none of the claims were viable due to Gary's malpractice.

3

5.      Fourth, in early 2019, before Gary commenced the Florida action against the wrong manufacturer, Ms. Marshall's daughter Ardria complained to him about the lack of funds from the insurance settlement. In response, Gary arranged for litigation funding of approximately $350,000, which Ms. Marshall was not obligated to pay back unless Gary's anticipated product liability action resulted in a recovery. By early March 2019, $230,000 in funding was distributed to Ms. Marshall. On March 14, 2019, however, Kobie Gary, at Willie Gary's direction, and Marcus Lett, a representative of the litigation funders, falsely told Ms. Marshall and Ardria that the funds had to be returned or the FBI would arrest and prosecute them for criminal fraud and other crimes. In reliance on these fraudulent representations by Kobie and Lett, Ms. Marshall and Ardria returned the $230,000 in litigation financing on the same day, March 14, 2019, even though, unbeknownst to them, Ms. Marshall had the contractual right to retain the funds until and unless she made a recovery in Gary's anticipated product liability action.

## THE PARTIES

6.      Plaintiff Ardria Clark is a citizen of Georgia who brings this action as next friend, and on behalf, of her mother, Marian Green Marshall.

7.      Plaintiff Marian Green Marshall, who sustained serious brain injuries and mental deficits caused by the subject accident, is a citizen of Georgia.

4

8.     Defendant Gary, Williams, Parenti, Watson, Gary & Gillespie, P.L.L.C. d/b/a Gary, Williams, Parenti, Watson and Gary, P.L.L.C. ("Gary Firm") is a Florida professional limited liability company whose members, Willie E. Gary, Lorenzo Williams, Donald N. Watson, Sekou Gary and Phyllis Y. Miller-Gillespie, are Florida citizens.

9.     Defendant Willie E. Gary, the managing member of the Gary Law Firm, is a citizen of Florida.

10.     Defendant Kobie O. Gary, who works as a paralegal of the Gary Firm, is a citizen of Florida.

11.     Defendant Marcus Lett, who is an employee or representative of companies that provided litigation funding to Ms. Marshall, is, upon information and belief, a citizen of Georgia.

**JURISDICTION AND VENUE**

12.     This Court has diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because this is a civil action where the matter in controversy exceeds $75,000 and is between citizens of different States.

13.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

5

14.     Venue is proper in this division under Local Rule 3.4 because plaintiff resides in this division.

## BACKGROUND

### A.     The Automobile Accident.

15.     On October 19, 2016, Ms. Marshall was driving east on East Clay Street in Thomasville, Georgia. As she entered the intersection with Glenwood Drive, a 2014 Dodge RAM 2500 truck driven by Cleburn Bannister was turning left onto Glenwood Drive from the east-bound lane of East Clay Street. Failing to yield to Ms. Marshall's Nissan Sentra, Banniser's RAM 2500 truck collided head on with the left front end of Ms. Marshall's Nissan Sentra. Mr. Bannister, who was not injured in the crash, was charged with violating O.C.G.A. 40-6-71, which prohibits drivers from turning left without yielding for oncoming traffic.

16.     The driver's side airbag in the Nissan failed to timely deploy and Ms. Marshall's seat belt restraint system malfunctioned. Ms. Marshall's head struck the dashboard and steering wheel multiple times with such force that she suffered catastrophic injuries to her head and face. Ms. Marshall sustained severe and permanent injuries, including brain injuries, serious mental deficits, several broken ribs, a grade IV lacerated liver, a ruptured heart valve, a collapsed lung, a concussion, and a severe ankle injury that required amputation just below the knee.

17.    In addition to the defective airbag and seat belt systems, upon information and belief, other design defects and manufacturing defects in the 2012 Nissan Sentra were proximate causes of Ms. Marshall's injuries.

18.    After they arrived at the accident scene, Thomas County EMS rushed Ms. Marshall to Archbold Memorial Hospital in Thomasville, Georgia. Because of her severe injuries, however, she was airlifted to Tallahassee Memorial Hospital in Tallahassee, Florida, where she was admitted to the ICU for the next 20 days.

**B.    Ms. Marshall Retains Willie Gary.**

19.    After the accident, Mr. Marshall's daughter, Tamesha Marshall-Pharr, called Willie Gary and invited him to solicit Ms. Marshall's family to retain him as Ms. Marshall's lawyer. Within a few days of the accident, Gary traveled from his office in Stuart, Florida to Tallahassee to visit Ms. Marshall and her family in the hospital. Gary met in Ms. Marshall's ICU hospital room with several family members, including Ms. Marshall's three daughters, Tamesha, Ardria, and Darlene, their husbands, and Ms. Marshall's husband. Gary insisted that he would be able to "get justice" for Ms. Marshall by suing the responsible parties and recovering tens of millions of dollars on her behalf.

20.    At that time, Ms. Marshall was severely injured, drifting in and out of sleep, and could not understand the purpose of Gary's visit. Gary nevertheless

7

convinced Ms. Marshall's family members that he and his firm should be retained as Ms. Marshall's lawyer. At Gary's suggestion, Tamesha signed Ms. Marshall's name to a retainer agreement produced by Gary, as next friend to Ms. Marshall and with the consent of all other family members present. *See* Exhibit 1.

### C. Tamesha and Kobie Gary Have Sex and, Upon Information and Belief, Tamesha and Willie Gary also Have Sex.

21. In late 2016, after Gary obtained his retainer agreement executed on behalf of Ms. Marshall by Tamesha, Tamesha told her mother and Ardria that, at Kobie Gary's request, she had engaged in sexual acts with Kobie on several occasions. She also reported that Kobie had told her that his father, Willie Gary, also wanted to have sex with her. Tamesha told Ms. Marshall and Ardria that she was consider this request. Upon information and belief, Tamesha then engaged in sexual acts with Willie Gary on one or more occasions.

### D. The Insurance Settlement.

22. Clebord Bannister, the driver of the truck that collided with Ms. Marshall's Nissan Sentra, had motor vehicle insurance policies with policy limits of $1.5 million. Bannister's documented failure to yield when he turned left into Ms. Marshall's car and the severity of Ms. Marshall's injuries conclusively established that Bannister was liable for damages more than the policy shortly after the accident.

8

23.     Gary entered into a settlement agreement with Bannister and his insurers, but he did not disclose that information to Ms. Marshall or any of Ms. Marshall's family members other than Tamesha. Upon information and belief, Gary agreed to deliver Ms. Marshall's share of the insurance settlement to Tamesha in return for Tamesha's agreement to have sex with Kobie and him.

24.     In or about January 2017, Ms. Marshall's other family members noticed that Tamesha suddenly had access to substantial funds. She bought a new 2016 Mercedes-Benz GLC 300 luxury SUV and started talking about buying a new house. Tamesha eventually admitted that Gary had obtained an insurance settlement that was the source of her funds. After Ms. Marshall was released from the hospital, Tamesha took charge of her affairs, moving Ms. Marshall to Miami Gardens, Florida, where Tamesha lived. After her release from the hospital and continuing until the present, Ms. Marshall has suffered from mental deficits that have compromised her ability to make judgments on her own.

25.     In February or March 2017, Tamesha bought a 3-bedroom house, also in Miami Gardens, Florida. Tamesha and Ms. Marshall moved to that house, where they lived until Tamesha was killed in July 2018. Ms. Marshall then moved back to Thomasville, Georgia, where she has lived with her other daughter, Ardria Clark.

9

**E.     The Litigation Funding.**

26.     In early 2019, Ms. Marshall's daughter Ardria asked Willie Gary about the insurance settlement and why Ms. Marshall had not received her share of that settlement. He replied that the insurance settlement was only a small beginning to the multi-million-dollar recovery he would obtain from product liability lawsuits against the car and airbag manufacturers. Gary told Ardria that if her mother needed funds pending that recovery, he could easily arrange litigation funding that would not have to be repaid until he obtained a recovery in the product liability lawsuits.

27.     Ardria and Ms. Marshall agreed to Gary's proposal of litigation financing. Kobie Gary thereafter contacted them and arranged for litigation funding of approximately $350,000 from two litigation funding companies. The litigation funding contracts were signed in February 2019 and Ms. Marshall received $230,000 in funds on or about early March 2019, with $120,000 in additional funds scheduled to be disbursed over the next few months.

28.     On the morning of March 14, 2019, however, Kobie Gary called Ardria and told her that she and Ms. Marshall had to return the $230,000 in disbursed litigation funding immediately or face criminal charges and prosecution by the FBI. Kobie said that the funding had been approved by mistake and that unless the disbursed $230,000 was wire transferred back to the funding companies that day,

10

both Ardria and Ms. Marshall would be guilty of criminal fraud and likely sentenced to prison. Kobie told them to contact Marcus Lett, a representative of the litigation funding companies, for the wire transfer instructions as to how to return the funds.

29.     Horrified by the prospect of criminal prosecution and the possibility of a prison term, Ardria and Ms. Marshall called Lett, who made the same representations as Kobie, *i.e.*, unless the funds were returned, the FBI would arrest them, charge them with criminal fraud and other crimes, and seek prison terms of several years. Ardria and Ms. Marshall immediately arranged to wire transfer the $230,000 that day, March 14, 2019, pursuant to the instructions Lett provided.

30.     In fact, Kobie's and Lett's representations were false. Under the terms of the litigation funding contracts, Ms. Marshall was entitled to retain the funds until and unless she obtained a recovery in Gary's anticipated product liability actions.

F.     **The Florida Product Liability Action.**

31.     On April 18, 2019, Gary commenced a civil action against "Nissan Motor Company, LTD. d/b/a Nissan Mexicana, S.A. de C.V.," which Gary alleged was the manufacturer of Ms. Marshall's 2012 Nissan Sentra. Gary also named as defendants Takata Corporation and TK Holdings, Inc., which Gary alleged manufactured the airbags in the Sentra. Gary's complaint asserts that Ms. Marshall's injuries were caused by design and manufacturing defects in the car and the airbags.

11

32.     However, the defendant that Gary alleged to have manufactured the car, Nissan Motor Company, LLC, is Nissan's Japanese parent company that did not manufacturer Ms. Marshall's 2012 Sentra. A Mexican company, Nissan Mexicana, S.A. de C.V., manufactured the Sentra at its assembly plant in Aguascalientes City, Mexico. Gary made no effort to sue or the actual car manufacturer, Nissan Mexicana, S.A. de C.V. In addition, Gary commenced the action in Florida state court even though the Florida court did not have jurisdiction over either the defendants or the car manufacturer, had it been sued, because the accident took place in Georgia. And even if Gary had sued the car manufacturer in Georgia, Ms. Marshall's products liability claims were time barred because Gary failed to commence the action within Georgia's applicable two-year statute of limitations.

33.     In addition, Gary's complaint mistakenly alleges that the Sentra was equipped with Takata airbags that were subject to recall for design and manufacturing defects. In fact, even though the Sentra's airbags failed to properly deploy, they were not subject to recall. When Gary discovered that, he withdrew from representing Ms. Marshall in the Florida product liability action without disclosing his acts of professional malpractice. Ms. Marshall retained new counsel, who had no choice but to settle for nuisance value because none of the product liability claims were viable due to Gary's malpractice.

**FIRST CLAIM FOR RELIEF**
**(Legal Malpractice, Breach of Contract, Breach**
**of Fiduciary Duty — Against the Gary Firm and Willie Gary)**

34.     Ms. Clark and Ms. Marshall repeat the allegations set forth in paragraphs 1 through 33, as though fully set forth herein.

35.     In late October 2016, Ms. Marshall, represented by her next friend and daughter, Tamesha Marshall-Pharr, and with the consent of her husband and other daughters, entered into the Retainer Agreement with the Gary Firm annexed hereto as Exhibit 1.

36.     Under the Retainer Agreement, Ms. Marshall entrusted Gary, the Gary Firm and its other lawyers and paralegals with representing her interests in prosecuting claims arising from the October 19, 2016 motor vehicle accident, including claims against Cleburn Bannister, the driver of the RAM 2500 truck that collided head on with Ms. Marshall's Nissan Sentra, as well as the manufacturers of Ms. Marshall's Nissan Sentra and the airbags with which the Sentra was equipped.

37.     Under the Retainer Agreement, the Gary Firm and Willie E. Gary agreed to represent Ms. Elliott in prosecuting such claims.

38.     The Retainer Agreement gave rise to an attorney-client relationship between Ms. Marshall, as client, and the Gary Firm and Willie Gary, as attorneys, which existed from October 2016 through July 15, 2021.

13

39.     The Gary Firm and Willie Gary owed duties under the Retainer Agreement to represent Ms. Marshall with ordinary care, skill, and diligence in accordance with the accepted standards of professional service and competence expected of lawyers representing clients in Georgia personal injury and product liability cases.

40.     The Gary Firm and Willie Gary breached their duties by failing to exercise the ordinary care, skill, and diligence in accordance with the accepted standards of professional service and competence expected of lawyers representing clients in Georgia personal injury and product liability cases.

41.     The Gary Firm and Willie Gary owed fiduciary duties under the Retainer Agreement to place Ms. Marshall's interests over their own interests.

42.     The Gary Firm and Willie Gary breached their fiduciary duties under the Retainer Agreement by placing their own interests over Ms. Marshall's interests.

43.     The Gary Firm and Willie Gary breached their fiduciary duties, contractual duties, and duties of ordinary care, skill, and diligence under the Retainer Agreement by, *inter alia*, engaging in the following conduct:

> (i)     withholding the unreasonable fee of $600,000 for the Bannister insurance settlement, even though that required only a few hours work;

14

(ii)    failing to disclose the details of the insurance settlement to Ms. Marshall in a manner to assure that Ms. Marshall's rights were protected, even though they knew that (a) Ms. Marshall had brain damage and suffered from mental deficits; and (b) Tamesha was spending the settlement proceeds on luxury items for herself;

(iii)    distributing Ms. Marshall's share of the insurance settlement in four irregular payments delivered to Ms. Marshall's daughter, Tamesha Marshall-Pharr, in return for Tamesha's agreement to have sex with Kobie Gary and, upon information and belief, Willie Gary;

(iv)    distributing Ms. Marshall's share of the insurance settlement to Tamesha Marshall-Pharr without taking any precautions to assure that the funds were used or held for Ms. Marshall's benefit, even though they knew that (a) Ms. Marshall had brain damage and suffered from mental deficits; and (b) Tamesha was spending the settlement proceeds on luxury items for herself;

(v)    instructing Kobie Gary to fraudulently represent that Ms. Marshall and her daughter Ardria Clark would be arrested and prosecuted for criminal fraud unless they returned the $230,000 in litigation funding that had been disbursed prior to March 14, 2019;

(vi)    failing to commence a product liability action in Georgia against the car and airbag manufacturers within the applicable two-year statute of limitations;

(vii)    commencing the Florida product liability action against the wrong manufacturer in the wrong jurisdiction after the applicable statute of limitations had expired; and

(viii)    concealing their acts of professional malpractice in bringing the Florida product liability action and

misrepresenting the reasons why they withdrew from representing Ms. Marshall in that action.

44.     These breaches caused injury to Ms. Marshall, including, but not limited to:

    (i)     $550,000 retained by the Gary Firm and Willie Gary as an unreasonable fee for the insurance settlement, which should have been distributed to Ms. Marshall;

    (ii)    diversion of most of the insurance settlement to Tamesha Marshall-Pharr, who used those proceeds for her own benefit rather than Ms. Marshall's benefit;

    (iii)   $350,000 in litigation funding proceeds, including $230,000 disbursed funds that Kobie Gary, acting on Willie Gary's instructions, defrauded Ms. Marshall and her daughter Ardria into returning;

    (iv)    $25,000,000 in damages, as estimated by the Gary Firm and Willie Gary, that Ms. Marshall would have recovered from the manufacturers of her 2012 Nissan Sentra and its airbag system had the Gary Firm and Willie Gary commenced a timely product liability action in Georgia against the proper parties.

45.     Pursuant to O.C.G.A. § 9-11-9.1(b), the period of limitation will expire or there is a good faith basis to believe it will expire on one or more claims stated in this complaint within ten days of the date of filing the complaint and, because of time constraints, an affidavit of an expert described in O.C.G.A. § 9-11-9.1(a) could not be prepared. *See* Clark Affidavit annexed hereto as Exhibit 2.

16

## SECOND CLAIM FOR RELIEF
### (Unreasonable Attorney's Fee
### -- Against the Gary Firm and Willie Gary)

46.   Ms. Marshall repeats the allegations set forth in paragraphs 1 through 45, as though fully set forth herein.

47.   The Gary Firm and Willie Gary had fiduciary duties under applicable Georgia law not to charge unreasonable fees for their legal services provided to Ms. Marshall.

48.   The almost $600,000 fee that the Gary Firm and Willie Gary charged for finalizing the settlement with Cleburn Bannister's insurers was unreasonable as a matter of law because they expended no more than a few hours work on negotiating and finalizing that settlement.

49.   The Gary Firm and Willie Gary breached their fiduciary duties by charging Ms. Marshall such an unreasonable fee.

## THIRD CLAIM FOR RELIEF
### (Fraud – Against all Defendants)

50.   Ms. Marshall repeats the allegations set forth in paragraphs 1 through 49, as though fully set forth herein.

51.   In telephone calls on March 14, 2019, Kobie Gary and Marcus Lett told Ms. Marshall and her daughter Ardria Clark that they must return the $230,000 in

disbursed litigation funding or they would be arrested and prosecuted for criminal fraud and other crimes by the FBI. Kobie and Lett told them that they would be convicted and sentenced to prison terms of several years unless they returned the funds by wire transfer immediately. Lett provided the wire instructions, which Ardria Clark used to return the funds on that same day, March 14, 2019.

52.     Willie Gary instructed Kobie Gary to make those representations to Ms. Marshall and Ardria Clark with the objective of defrauding them into returning the $230,000 in disbursed litigation funding, even though they had the contractual right to retain those funds.

53.     Kobie's and Lett's representations were false. Under the terms of the litigation funding, Ms. Marshall was entitled to retain the disbursed $230,000 and obtain an additional $120,000 in funding pending the outcome of Gary's Florida product liability action. Ms. Marshall was not obligated to return or repay the litigation funding unless and until Ms. Marshall obtained a recovery in that litigation. Contrary to Kobie's and Lett's representations, there was no risk that the FBI or any other law enforcement agency would arrest Ms. Marshall and Ardria or prosecute them for any crimes.

54.     Kobie and Lett made the representations, and Willie Gary instructed Kobie to make the representations, for the purpose of defrauding Ms. Marshall and

18

Ardria Clark into returning the $230,000 in disbursed litigation funding, even though they had the contractual right to retain those funds.

55.    In reliance on Kobie's and Lett's representations, Ms. Marshall and Ardria Clark returned the $230,000 in disbursed litigation funding by wire transfer, pursuant to the instructions provided by Lett, on March 14, 2019.

56.    By relying on Gary's false representations, Ms. Marshall incurred damages, including:

> (i)    the $230,000 in litigation funding that was returned by wire transfer on March 14, 2019; and

> (ii)   the remaining $120,000 in litigation funding that was to be disbursed within a few months after March 2019.

## FOURTH CLAIM FOR RELIEF
### (Bad Faith Liability under O.C.G.A. § 13-6-11 – Against all Defendants)

57.    Ms. Marshall repeats the allegations set forth in paragraphs 1 through 56, as though fully set forth herein.

58.    The Gary Firm, Willie Gary, Kobie Gary, and Marcus Lett have acted in bad faith by making the intentional misrepresentations to Ms. Marshall and her daughter Ardria on March 14, 2019 as described, *supra*, at ¶¶ 51-54. Even though Defendants knew that Ms. Marshall had the contractual right to retain the $230,000 in disbursed litigation funding, they falsely represented that Ms. Marshall and Ardria

19

would be arrested and prosecuted for criminal fraud and other crimes by the FBI unless the funds were returned.

59.    Defendants' misconduct caused Ms. Marshall unnecessary trouble and expense, including forcing her to bring this action to recover damages for their intentional false representations.

60.    Ms. Marshall is therefore entitled to recover the expenses of this action, including reasonable legal fees, under O.C.G.A. § 13-6-11.

## FIFTH CLAIM FOR RELIEF
### (Punitive Damages – Against all Defendants)

61.    Ms. Marshall repeats the allegations set forth in paragraphs 1 through 60, as though fully set forth herein.

62.    The conduct of the Defendants described above, including their retention of an inflated and unreasonable fee for negotiating a simple insurance settlement, Kobie Gary's and Willie Gary's agreement to divert Ms. Marshall's share of the insurance settlement to Tamesha Marshall-Pharr in return for sex, their intentionally false representations to defraud Ms. Marshall into returning litigation funding to which she was entitled, and the Gary Firm's and Willie Gary's gross legal malpractice in failing to commence a timely product liability in the proper forum against the manufacturers of Ms. Marshall's car and its airbag system, constitutes

clear and convincing evidence that their actions showed willful misconduct, malice, fraud, wantonness, oppression or that entire want of care which would raise the presumption of conscious indifference to consequence.

63.     Defendants acted, or failed to act, with the specific intent to cause harm to Ms. Marshall.

64.     In addition, the Gary Firm and Gary have committed similar acts of legal malpractice and other misconduct in prior cases, which confirms a pattern of willful misconduct, malice, fraud, wantonness, oppression or that entire want of care which would raise the presumption of conscious indifference to consequence.

65.     The Gary Firm and Willie Gary are therefore liable for punitive damages under O.C.G.A. § 51-11-2 in an amount to be proven at trial.

## JURY DEMAND

66.     Ms. Marshall demands a jury on all issues that may be tried by jury.

## PRAYER FOR RELIEF

WHEREFORE Ms. Marshall demands judgment as follows:

(i)     under the First Claim for Relief, an award of compensatory damages against the Gary Firm and Willie Gary to be proven at trial, but at least $25,000,000, which was Willie Gary's estimate of Ms. Marshall's recoverable damages in a product liability action against the manufacturers of Ms. Marshall's 2012 Nissan Sentra and its airbag system;

(ii)    under the Second Claim for Relief, an award of compensatory damages against the Gary Firm and Willie Gary to be proven at trial, but at least $550,000;

(iii)   under the Third Claim for Relief, an award of compensatory damages against all Defendants to be proven at trial, but at least $350,000;

(iv)    under the Fourth Claim for Relief, an award of compensatory damages consisting of Ms. Marshall expenses in this litigation, including attorney's fees;

(v)     under the Fifth Claim for Relief, an award of punitive damages to be proven at trial based on Defendants' financial assets and income;

(vi)    prejudgment interest and expenses, including attorneys' fees; and

(vii)   such other legal or equitable relief as the Court deems appropriate and just.

Dated:   March 13, 2023

_____
MARIAN GREEN MARSHALL
pro se
307 Hayden Way
Thomasville, Georgia 31792


_____
ARDRIA CLARK, next friend, and
on behalf, of MARIAN GREEN
MARSHALL, pro se
305 Hayden Way
Thomasville, Georgia 31792
(229) 403-7047 (mobile)
ardriad@yahoo.com

23